*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GEORGE FULTON,

        *Petitioner-Appellant,*

    *v.*

ERNIE MOORE, Warden,

        *Respondent-Appellee.*

No. 07-3434

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 05-00316—Susan J. Dlott, District Judge.

Argued: January 29, 2008

Decided and Filed: April 1, 2008

Before: GUY, GILMAN, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Katherine A. Szudy, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. M. Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Katherine A. Szudy, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellant. Michael Scott Criss, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Petitioner George Fulton appeals the district court's denial of his application for habeas corpus under 28 U.S.C. § 2254. His habeas claim of double jeopardy stems from the Clermont County, Ohio trial court's *sua sponte* declaration of a mistrial after a jury was impaneled but before opening arguments in his criminal trial. The mistrial was ordered when, after the prosecution's amendment of dates in the indictment, Fulton's counsel requested a continuance of an uncertain length.

Fulton's second trial was to the bench and resulted in a conviction on charges of gross sexual imposition and rape, followed by the imposition of a life sentence.

Because the requisite high degree of necessity existed for the mistrial, we hold that Fulton's Fifth Amendment guarantee against double jeopardy was not violated. The district court is affirmed.

1

## I.

This case presents a unique set of circumstances to consider in deciding whether a criminal defendant was subjected to double jeopardy in violation of the Fifth Amendment. The question we must answer is if a mistrial, granted for the benefit of—yet objected to by—the defendant, can meet the requirements of manifest necessity as set forth in *Arizona v. Washington*, 434 U.S. 497, 515-16 (1978).

A jury trial commenced in the Clermont County, Ohio Court of Common Pleas on March 26, 2002, in the matter of *State of Ohio v. George J. Fulton*. The charges, as stated in the grand jury's indictment of December 20, 2000, were one count of gross sexual imposition and one count of rape. The complainant was Fulton's daughter.

Because assigned judge William Walker was not available, Judge Ringland presided over jury selection. After the jury was sworn and sent on a lunch break, prosecutor Chapman advised the court that it had just confirmed with the complainant's mother that the dates in the indictment of May through September 1990 were off by a year and should be May through September 1991. The prosecution requested that the court allow it to amend the indictment under Ohio Rule of Criminal Procedure 7D.[1] Counsel for the defense opposed the motion, asserting that the court should examine the Grand Jury record and that he "[thought] we ought to have an evidentiary hearing with, what I believe is, [the complainant's mother] testifying as to the reasons for this error in the date and/or Officer Lacy of the Goshen Police Department."

The trial court granted the motion, stating on the record that it found no bad faith on behalf of the prosecution in making the request. Mr. Haynes, counsel for the defense, interjected:

> MR. HAYNES:      I'm sorry to interrupt you but I just want to make—my understanding of the record, the way I understand this to have come down is, Mr. Chapman and I talked last night and had, at that point, a discussion about when these parties separated. George Fulton and Melissa, then, Fulton.
>
> And Mr. Chapman's impression was that, it was in '89, they were separated for over a year before the divorce was final. I told him, flatly, that I didn't think that was the case. And my understanding is that he has then, today, I guess, has had a conversation—or, since last night, anyway, had a conversation with Melissa Loggins,

---

[1] Ohio Rule of Criminal Procedure 7(D) governs the amendment of an indictment, information, or complaint and provides:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. *Where a jury is discharged under this division, jeopardy shall not attach to the offense charged in the amended indictment, information, or complaint.* No action of the court in refusing a continuance or postponement under this division is reviewable except after motion to grant a new trial therefor is refused by the trial court, and no appeal based upon such action of the court shall be sustained nor reversal had unless, from consideration of the whole proceedings, the reviewing court finds that a failure of justice resulted.

(Emphasis added.)

now, formerly Melissa Fulton, and that she had then said, "No, that's not when we separated. It was in 1990." But that she had led Mr. Chapman to believe that they were separated for over a year before the divorce was filed and I think that that goes directly to her credibility.

> THE COURT: Well, it may and that's why you'll be able to impeach her on that, if you're able to, under 613. However, it does not preclude Mr. Chapman from making an amendment under 7D, which I will grant.

Judge Ringland then anticipated that the amendment might "catch [defense counsel] unaware," and gave Mr. Haynes the

> opportunity to prepare and to take the necessary time you need to prepare for the impeachment of the witnesses, as well as obtaining witnesses in support of your defense for this new time frame. So, how long do you need?

Mr. Haynes stated his intention to bring a motion to dismiss the amended indictment, as well as his need to interview potential new witnesses as a result of the new dates. The following colloquy ensued:

> THE COURT: Are we talking within a week or two weeks or—

> MR. HAYNES: No, I think we need to get the investigator out. It would have to be more than that.

> THE COURT: All right. So, in lieu of denial of your motion to dismiss, Mr. Haynes, it's my understanding you're asking for additional time to prepare, is that correct?

> Mr. HAYNES: Yes, I am, Your Honor.

> THE COURT: All right. You shall have it. And we'll just have to get this set up for a new trial date. Now, let me indicate that, because of the new date, I believe there was a—wasn't there a review of some child CPS [Children's Protective Services] records?

> MR. CHAPMAN: Judge, there had been in the past a review conducted by Judge Walker. An in-camera review of CPS records that I had obtained from Hamilton County. When, I think, we looked, there were no CPS records in our county or in Butler County.

> . . . .

> THE COURT: We need to raise that issue, again, with the trial judge to have him review the records, again, concerning any discrepancy in the dates and review the Grand Jury transcript for discrepancy in dates, to determine if there's any particularized need.

> MR. HAYNES: So, you're not overruling my request for evidentiary hearing. You're deferring that?

> THE COURT: I didn't say an evidentiary hearing. I said it needs to be an in-camera inspection by The Court to determine if there's any particularized need. I don't think an evidentiary hearing is required, at this point. I think a review

of the transcripts and records will be all that's required. Now, after that, if the judge feels it necessary, then he will—or may—if he wishes, ask for an evidentiary hearing.

   MR. HAYNES:  All right.

   THE COURT:  Now, in as much as this was sent over to me, as Administrative Judge, only because Judge Walker was unexpectedly unavailable and so, under the rules of superintendency, it goes back to the original judge.

   MR. CHAPMAN:  Then, Judge, my understanding is that The Court is going to grant a continuance under Rule 7D. Discharge the jury, declare a mis-trial, it will not be a count for double jeopardy, at this point, and then, the matter will be referred to Judge Walker. Maybe we can set a pre-trial next week to get oriented as to when we're going to reschedule.

   THE COURT:  As far as I'm concerned, it is not a count that's double jeopardy because I've indicated that what you did was—that no evidence of any bad faith—that you indicated the information as soon as you received it and, certainly, that's for a reviewing court to review at a later point, but at this time, I'll mistry the case with—and, again, it's up to Judge Walker to determine if it's double jeopardy but I would assume it would not be.

   MR. HAYNES:  You note our objection to that.

   THE COURT:  I note your objection, sir.

The defense filed two motions more than three weeks later, on April 19, 2002: (1) for disclosure of grand jury proceedings, and (2) to dismiss the indictment on grounds including the alleged violation of Fulton's guarantee against double jeopardy. Judge Ringland denied Fulton's motion to dismiss to the extent it relied on the statute of limitations in a one-sentence order issued April 30, 2002, the same date a docket entry was made amending the dates in the indictment and bill of particulars to 1991. He did not address Fulton's double jeopardy argument again. Judge Walker briefly addressed the issue in an order dated May 17, 2002, entitled "ENTRY GRANTING DEFENDANT'S REQUEST FOR A CONTINUANCE OF TRIAL AND DISCHARGING THE JURY," reflecting the court's action in granting an open-ended continuance of the trial and stating that "[t]he Court further found that jeopardy should not attach to the offenses charged in the amended indictment." Judge Walker entered an order denying defendant's motion to compel disclosure of grand jury testimony on June 17, 2002. On July 3, 2002, he issued an order denying Fulton's motion to dismiss, concurring with Judge Ringland's finding of no bad faith on the part of the prosecution in requesting amendment of the indictment, and stating only "double jeopardy does not attach by the retrial of this matter."

Fulton waived his right to trial by jury and was convicted on all charges by the court on October 11, 2002, more than six months after the mistrial declaration. He received a life sentence for the conviction of rape, a concurrent two-year sentence for the other charge, and was determined to be a "Sexually Oriented Offender." His multiple-claim direct appeal included the assertion that his guarantee against double jeopardy had been violated, but that particular argument was not addressed by the state court of appeals in denying the requested relief. Fulton again included the double jeopardy claim in his discretionary appeal to the Ohio Supreme Court, but on March 3, 2004, that court stated simply that Fulton's leave to appeal was denied, and dismissed the appeal "as not involving any substantial constitutional question."

Fulton's petition for a writ of habeas corpus was filed on May 9, 2005, in the United States District Court for the Southern District of Ohio, Western Division. The petition was filed by an assistant state public defender and stated only one ground:

> The Double Jeopardy Clause of the United States Constitution barred the retrial of George Fulton after the trial court erroneously assumed that a manifest necessity existed for the sua sponte declaration of a mistrial.

The matter was referred to a magistrate judge, who issued a report recommending denial of Fulton's petition. The district court adopted the report and recommendation over Fulton's objections, and dismissed the petition in its entirety on March 8, 2007. That order also granted Fulton a Certificate of Appealability, certified pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of the order would be taken in "good faith," and granted Fulton leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. Fulton timely filed his notice of appeal on April 4, 2007.

## II.

We conduct a *de novo* review of the district court's decision on petitioner's habeas corpus application. *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Fulton's petition was filed after the 1996 passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), which provides in part that federal courts are to grant writs of habeas corpus with respect to state court judgments where the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The state asserts, citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), and *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998), that § 2254(d) applies here and that this court may grant the writ only if the state court acted unreasonably in applying Supreme Court precedent to the petitioner's claim.

In his final reply brief, Fulton argues that the state's assertion relies on "outdated" case law and is incorrect. He contends that the state courts simply did not assess the merits of his claim, and that by its very terms, § 2254(d) does not apply as there was no adjudication of the claim in state court. He cites to *Wiggins v. Smith*, 539 U.S. 510 (2003), for the proposition that under such circumstances this court is not limited to granting the writ only if the state court's application of "clearly established Federal law" was "objectively unreasonable," but must apply the standard of review used prior to 1996. *See Williams*, 529 U.S. at 409. Accordingly, he claims that here, the "pre-AEDPA de novo standard of review" is appropriate (quoting *Clifford v. Chandler*, 333 F.3d 724, 730 (6th Cir. 2003)).

We need not decide this issue because whether we apply a *de novo* or deferential standard of review to the determination made by the state court, we are convinced that Fulton's second trial did not subject him to double jeopardy.

## III.

The Fifth Amendment provides that a person shall not be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V.[2] This civil right does not protect only against being punished twice, but against being placed in jeopardy twice. *Ball v. United States*, 163 U.S. 662, 669 (1896) (defendant had been tried and acquitted prior to being improperly subjected to a second trial). In a jury trial, jeopardy attaches when the jury is impaneled and sworn. *Serfass v. United States*, 420 U.S. 377 (1975) (citing *Downum v. United States*, 372 U.S. 734 (1963)). Notwithstanding Judge Walker's statements to the contrary or the prosecutor's reference to Ohio's Rule 7(D), jeopardy had attached by the time the mistrial was ordered, as the petit jury had been impaneled and sworn. Yet, although the Double Jeopardy Clause ensures the defendant's right against repeated prosecutions for the same offense, decades of Supreme Court decisions instruct that the clause is not an absolute bar to retrial under any circumstances.

Beginning with *United States v. Perez*, 22 U.S. 579 (1824), where the trial court discharged a deadlocked jury without the defendant's consent in a capital case, the Supreme Court has held on numerous occasions that there are circumstances where the Fifth Amendment does not bar retrial. Those circumstances are not definable, however, and the decision is left to the sound discretion of the trial judge. *Id.* at 580. The right against double jeopardy "does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." *Wade v. Hunter*, 336 U.S. 684, 688-89 (1949).

In *United States v. Jorn*, 400 U.S. 470 (1971), the court carefully considered under "what circumstances retrial is to be precluded when the initial proceedings are aborted prior to verdict without the defendant's consent." *Id.* at 480. In that case, the trial judge *sua sponte* declared a mistrial when he determined that nonparty witnesses should have the opportunity to consult with counsel prior to giving testimony that might lead to self-incrimination. The *Jorn* court looked to *Perez*, quoting Justice Story's "fountainhead" opinion concerning trial judges' well-placed discretion and stating their authority to declare mistrials "whenever, in their opinion, taking all the circumstances into consideration, there is a *manifest necessity* for the act, or the ends of public justice would otherwise be defeated." *Perez*, 22 U.S. at 580 (emphasis added). The question of manifest necessity, as first articulated in *Perez*, "has since been applied by this Court as a standard of appellate review for testing the trial judge's exercise of his discretion in declaring a mistrial without the defendant's consent." *Jorn*, 400 U.S. at 481 (citations omitted). The decision in *Jorn* that reprosecution was barred by the Fifth Amendment turned largely on the court's finding that the trial judge acted abruptly, gave no consideration to a trial continuance, and allowed the parties no opportunity to argue or even object.

The *Jorn* decision discussed the previous decade's decision in *Gori v. United States*, 367 U.S. 364 (1961). In *Gori*, the trial judge declared a mistrial *sua sponte* when he determined the prosecution's questioning of a witness might bring in evidence of past crimes committed by the defendant. No abuse of discretion on the part of the trial judge was found in an analysis that included a finding that the judge was acting in the interest of the accused. "Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." *Gori*, 367 U.S. at 369. In reaching that conclusion, the court reasoned that "[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection . . . ." *Id.* at 368.

---

[2]That provision was found to be directly applicable to the States in *Benton v. Maryland*, 395 U.S. 784 (1969).

In *Washington*, after a mistrial was declared by the trial judge, the petitioner filed his habeas application seeking a bar to reprosecution. The district court's grant of the petition was affirmed by the Ninth Circuit. The Supreme Court reversed, holding the trial judge's assessment of possible juror bias was to be accorded a high degree of respect, that the record reflected the judge's exercise of discretion and supported a finding of a "high degree" of necessity, and that the record need not contain an explicit finding of "manifest necessity." *Washington*, 434 U.S. at 516-17. That decision noted that completion of the trial by a particular tribunal, although a "valued right," was one that at times should be "subordinated to the public's interest in fair trials designed to end in just judgments." *Id*. at 503 n.11.

The state points to this court's habeas decision in *Walls v. Konteh*, 490 F.3d 432 (6th Cir. 2007). The defense was putting on its case in Walls's criminal trial in the Lucas County, Ohio Court of Common Pleas on September 11, 2001, when the trial judge learned of the attacks in New York and Washington, and the plane crash in Pennsylvania, along with reported information about a plane containing a bomb heading from Cleveland toward Toledo.[3] The judge excused the jury about a half hour before the courthouse was closed, and later, in chambers, told defense counsel and the prosecutor that "'I have no idea what's going to happen tomorrow, so at this point, I think we'll leave a message for the jurors not to return and just declare a mistrial.'" *Walls*, 490 F.3d at 435. On appeal we concluded that although it was a "close case," the trial judge did not act irrationally in concluding that the attacks might prove too distracting for the jury. *Id*. at 438-39.

In the instant case, the magistrate applied the factors set forth in *Washington* to determine whether the judge exercised "sound discretion" in declaring the mistrial: whether the trial judge (1) heard the opinions of the parties about the propriety of the mistrial; (2) considered the alternatives to a mistrial; and (3) acted deliberately, instead of abruptly. *Washington*, 434 U.S. at 515-16. As the magistrate noted, Judge Ringland did not specifically seek the parties' opinions concerning the propriety of a mistrial. He did, however, give the parties a full opportunity to voice their opinions and objections to his intended course of action. He clearly had in mind certain alternatives to a mistrial, as he asked defense counsel how long a period would be needed to prepare under the amended indictment, demonstrating that he considered calling the jury back at a later date. Finally, the magistrate found that "Judge Ringland did not act 'abruptly' in declaring a mistrial in this case." The magistrate noted that the judge had discussed the issue off the record with counsel, and went on the record after

> engaging in a lengthy colloquy with the lawyers concerning the defense's need to continue the trial to conduct a further investigation and to adequately prepare, as well as the need for the trial court to review in-camera the Children's Protective Services Records and Grand Jury transcript. The Court cannot characterize the decision to discharge the jury as "abrupt."

The magistrate, finding it a "close case," cited to *Washington*'s holding that there is no formula the trial judge is required to follow prior to declaring a mistrial, and that the trial judge need not make an explicit finding of "manifest necessity." *Washington*, 434 U.S. at 515-16. He pointed to Judge Ringland's peculiar predicament of being "faced with having to continue the trial for an indeterminate length of time in excess of two weeks to allow the defense to adequately prepare its case and to allow the trial court to review in-camera the records of the Children's Protective Services and the Grand Jury transcript." He further stated that there had been discussion of an evidentiary hearing. It is also noteworthy that the defense had articulated its plan to file a motion to dismiss, which would require weeks for briefing prior to its determination.

---

[3]Toledo is in Lucas County.

There is no contention here that the mistrial or delay in trying the case benefitted the prosecutor. It is clear that the ends of substantial justice would not have been attained if the case had continued to trial on March 26, 2002. Although the defense did raise a general, preservative objection to the trial judge's actions, it appears the mistrial was declared solely as a result of the defense's request for more time—a request the court granted in a display of fairness to Fulton.[4] We also note the defense does not claim that the "particular tribunal" chosen in March 2002 represented any advantage for him. The reality is that Fulton later waived trial by jury and, in part due to defense motions and preparation, did not sit for trial before the bench until more than *six months* after the jury was discharged. Fulton could not assert that a continuance of the March jury trial to this extent would have been practicable.

We agree with the magistrate judge that the trial judge in the present case (1) did not act abruptly in declaring the mistrial; (2) although not expressly on the record, implicitly considered alternatives to the mistrial in the form of recall of the jury at a later date—realistically the only alternative to a mistrial; and (3) engaged in a discussion with the parties about the double jeopardy implications of a mistrial. *Washington*, 434 U.S. at 515-16. It is clear to the court that Judge Ringland had Ohio's Rule 7D in mind, which specifically speaks to double jeopardy, *see supra.* Additionally, his finding of "no bad faith on behalf of the state," although perhaps not determinative under the circumstances, supports a finding that he was considering the double jeopardy implications of his ruling. See *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) ("Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.").

We also note that Fulton has not claimed any specific prejudice as a result of the mistrial. See *Washington*, 434 U.S. at 516 n.35 (citation omitted). In fact, the granting of the mistrial was bottomed on consideration for the defendant and his need to revamp his trial strategy based upon a one-year difference in the dates alleged in the indictment. Judge Ringland, who stated his belief that the case would be sent back to Judge Walker, necessarily had to consider attendant scheduling concerns, as well as the extended yet vague time line for the new preparations required by the defense. His decision to discharge the jury cannot be characterized as irrational.

Even on *de novo* review, the record supports the finding that the required "high degree" of necessity existed for the ruling of Judge Ringland, who clearly was "best situated intelligently to make such a decision," *Kennedy*, 456 U.S. at 677 n.7 (citing *Gori*, 367 U.S. at 368), and employed the discretion afforded him under the Fifth Amendment in discharging the jury. The district court is **AFFIRMED.**

---

[4] Although throughout these proceedings Fulton has insisted that his need for a continuance was limited to two or three weeks, this is not borne out by the record.