RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0424p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THOMAS KLEIN,

      *Petitioner-Appellant,*

    *v.*

SIMON LEIS, JR.,

      *Respondent-Appellee.*

Nos. 06-3949/3950/4039

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00164—Susan J. Dlott, District Judge.

Argued: September 18, 2008

Decided and Filed: November 25, 2008

Before: DAUGHTREY and GILMAN, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Mark G. Arnzen, Jr., DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Philip R. Cummings, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Mark G. Arnzen, Jr., Michael J. Newman, DINSMORE & SHOHL, Cincinnati, Ohio, for Appellant. Philip R. Cummings, HAMILTON COUNTY PROSECUTOR'S OFFICE, Cincinnati, Ohio, for Appellee. Thomas Klein, Lucasville, Ohio, pro se.

---

## OPINION

---

MILLS, District Judge. Thomas Klein seeks habeas relief based on an alleged Double Jeopardy violation.

Posit: Did the state trial judge fail to exercise "sound discretion" by granting a mistrial without allowing the defendant to argue against the motion?

No.

---

[*] The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

In the circumstances of this case, we hold that the trial judge exercised the requisite "sound discretion" and affirm the district court's denial of habeas relief.

## I.  BACKGROUND

### A.      Klein's State Court Trial

In April 2005, an Ohio grand jury indicted Klein for a variety of offenses, including aggravated burglary, kidnaping, receiving stolen property, and having a weapon while under a disability.  After making several attempts to pick the locks of his shackles and cell doors, Klein was declared a maximum security risk and required to wear an electronic stun belt concealed under his shirt.

In February 2006, Klein went to trial.  Proceeding *pro se*, Klein launched into an invective opening statement that repeatedly misstated the law and maligned both the prosecution and, to a lesser extent, the trial judge.

Klein began by telling the jurors that they were "not constrained by what you think someone else wants you to do, tells you you must do.  You do as you see fit.  You have ultimate power.  You control this machine.  You can make your decision based on the instinct, common sense, because you don't like someone's shoes."  The prosecution objected, and the trial judge agreed that such statements were improper because they told the jury how to reason.  Klein persisted and, following more objections, the trial court re-instructed Klein on opening statements, explaining that the "[o]pening statement is the opportunity you have to tell the jury what evidence you're going to put on."

Nevertheless, Klein continued on his original trajectory, telling the jurors about their "presumption of guilt" and describing his prosecution as "a pinata party . . . with me being the pinata."  Klein further complained that "[m]y lawyer, if I had one, or me, does not get to be at the indictment hearing."  The trial judge interjected: "It sounds like . . . somebody denied you the right to an attorney.  Not true."

Klein continued: "Now, the prosecutor's dream is to turn you into a rubber stamp . . . and have you do his bidding. . . .  He is not in the business of searching for truth.  His mission is to convict.  Pure and simple."  The prosecution objected, and the judge sustained.

Klein then began repeatedly referencing the death penalty, although his case was non-capital.  First, he stated that he was representing himself "rather than letting one of their lackeys lead me to the gas chamber."  Next, he opined that the prosecution was "wildly looking around for victims to drag to the guillotine."  Following objections, the Court warned Klein to "keep [his] opening statement in . . . proper perspective" or he would "have to sit down."  Undeterred, Klein told the jury that if they had a reasonable doubt, "then that's insufficient to take my life or take my liberty."  The Court repeated that the case was not a capital one and warned Klein: "I will declare a mistrial and we'll start all over.  I have warned you just like I would an attorney.  You have gone right past me six or seven times.  Do it again, it's a mistrial, and we'll start all over."

Following this admonition, Klein misdefined "reasonable doubt" and described the witnesses for the trial as either "innocent" or "bad guys," earning more objections.  Klein responded by accusing the prosecutor of having "destroyed a crucial piece of evidence," even though such evidence was destroyed in the ordinary course of business after Klein failed to take steps to discover and preserve it.  The prosecution objected and threatened to ask for a mistrial.  The court, which had previously barred any mention of a recorded conversation, chided Klein for bringing up the subject.

Klein also lashed out at the judge. First, he complained that "the Judge sounded kind of bored when he described his fundamental principles of law. . . ," earning him a rebuke from the trial judge and instructions not to criticize the court or other counsel. Nevertheless, Klein complained to the jury that "the Judge spoke down on me a couple times, today . . . like I was a child or some insignificant fly who's getting on his nerves." The court repeated that such criticisms were "highly inappropriate" and would have earned an attorney a fine. Klein persisted, however, suggesting that he would have requested a jury view of the crime scene, but "didn't even waste my breath." The trial judge quickly pointed out that Klein had not asked for a jury view and that any insinuation that he had prevented the jury view was improper.

Finally, Klein reached his summation:

> The point I was trying to make is that they -- I'm already being treated like I'm Hannibal Lector here, or you may see me fidget in my seat a little. I don't think it's because I like to fidget. I can't sit all the way back in my chair because I got this electrical shocker strapped to me.

At that point, Klein lifted his shirt to reveal the stun belt, and the prosecution moved for a mistrial:

| Mr. Butler: | Objection, Your Honor. |
| The Court: | Okay. |
| Mr. Klein: | I can't show the jury? |
| Mr. Butler: | All right. At this point in time, the State is going to request a mistrial. He's obviously gone way past -- |
| The Court: | You want to argue? |
| Mr. Klein: | Yes, I would like to argue. They can't know what I did? Is this some kind of secret? |
| The Court: | Granted. Mistrial is granted. |
| Mr. Klein: | Okay. |
| The Court: | Try it again. |
| Mr. Klein: | They don't want you to see the facts as reality. I didn't know it was some kind of illegal thing to show them the shocker. |

## B.        Post-Trial Proceedings

Shortly after the mistrial, Klein moved to dismiss the indictment on Double Jeopardy grounds. On March 6, 2006, the trial judge entered a written opinion explaining his mistrial ruling. The order recounted many of Klein's improper statements and estimated that only 3-5 minutes of Klein's 25-30 minute opening statement were proper. Further, the court found that Klein was trying to mislead the jury by casting himself as the victim of a wide-ranging government conspiracy to falsely convict him. Revealing the stun belt was the "grand finale."

Under these circumstances, the trial judge concluded that a mistrial was necessary because the use of a curative instruction would have been plain error:

> The situation . . . was only resolvable by declaring a mistrial. If the Court overruled the motion for a mistrial the defendant would gain an unfair advantage by contaminating the jury through his opening statement - moving them to be sympathetic to him because of the way he was being treated. On the other hand if the Court had tried to use a curative instruction to preserve the trial, it would have tainted the jury against the defendant. If the Court explained why Klein was wearing

the shock belt to the jury, it would have required the Court to inform the jury that
Klein had been found to be a maximum security risk for escape.

Following this opinion and the rejection of subsequent motions, a new trial date was set for
June 5, 2006.

## C.    Habeas Proceedings

On March 23, 2006, Klein filed a habeas petition under § 2254[1] in the district court.[2]  The
magistrate judge recommended denying the petition after finding that the trial judge acted with
"sound discretion."  The district judge agreed and rejected Klein's assertions that the trial transcripts
had been forged.[3]

On appeal, this Court initially declined to issue a certificate of appealability but, upon
reconsideration, granted a certificate to determine whether the trial judge exercised "sound
discretion."

## II.  APPLICABLE STANDARDS

A district court's decision to grant or deny habeas relief is reviewed *de novo*.  *Johnson v.
Bell*, 525 F.3d 466, 473 (6th Cir. 2008).  The underlying state court judgment is deferentially
reviewed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[4]  *Id.*  Where

---

[1] The petition was promptly converted to one arising under § 2241, though the magistrate and the district judge
ultimately applied the review standards contained in § 2254.

[2] Prior to filing a federal habeas petition, a petitioner must exhaust available state court remedies.  *Jells v.
Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008).  Typically, this means that the petitioner must appeal his claims to the
highest court of the state.  *Id.*  Klein did not do so.  Indeed, he could not, as the denial of a motion to dismiss based on
Double Jeopardy principles is not a final, appealable order under Ohio law.  *Harpster v. Ohio*, 128 F.3d 322, 325 (6th
Cir. 1997); *Wenzel v. Enright*, 623 N.E.2d 69, 72 (Ohio 1993).
  Nevertheless, Double Jeopardy principles "protect[] individuals 'not against being twice punished, but against
being twice put into jeopardy.'"  *Harpster*, 128 F.3d at 325 (quoting *Ball v. United States*, 163 U.S. 662, 669 (1896)).
If normal exhaustion rules were followed, the criminal defendant with a meritorious claim would have to submit to a
second trial before seeking redress.  *See Wenzel*, 623 N.E.2d at 72.  Thus, to fully ensure that Double Jeopardy rights
are safeguarded, federal courts review pre-trial habeas claims premised on Double Jeopardy principles so long as "those
claims have been raised and rejected in the state trial court and under state law there is no right of interlocutory appeal."
*Harpster*, 128 F.3d at 325.  At the time Klein filed his habeas petition, those conditions were met.  Neither party argues
that Klein's post-petition conviction, which permits him to appeal his Double Jeopardy claim in the state courts, alters
the calculus.

[3] Having lost his habeas suit, Klein was tried in the state court and convicted of aggravated burglary with
firearm specifications, four counts of kidnaping, and one count of having weapons while under a disability.  He received
a thirty-two (32) year sentence.

[4] Because § 2254 applies to those held "pursuant to the *judgment* of a State court. . . ."  28 U.S.C. § 2254(b)(1)
(emphasis added), a pretrial detainee ordinarily pursues habeas relief under § 2241.  *Fisher v. Rose*, 757 F.2d 789, 792
n.2 (6th Cir. 1985); *Delk v. Atkinson*, 665 F.2d 9 0, 93 (6th Cir. 1981); *Atkins v. Michigan*, 644 F.2d 543, 546 n.1 (6th
Cir. 1981).  Several courts have found that a pretrial detainee's § 2241 Double Jeopardy claims are not subject to
AEDPA's deferential standards, *see Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007); *Stow v. Murashige*,
389 F.3d 880, 888 (9th Cir. 2004); *Gonzalez v. Justices of Mun. Court of Boston*, 382 F.3d 1, 5-7 (1st Cir. 2004), *vacated
on other grounds*, 544 U.S. 918, 125 S. Ct. 1640, 161 L. Ed. 2d 474 (2005), though Klein's subsequent conviction could
mean that § 2254 and AEDPA again apply, *compare Yellowbear v. Wyo. Attorney Gen.*, 525 F.3d 921, 924-25 (10th Cir.
2008) (converting a § 2241 petition to a § 2254 petition and remanding case where a jury convicted petitioner during
the pendency of his federal habeas appeal); *Jackson v. Coalter*, 337 F.3d 74, 79 (1st Cir. 2003) (interim plea of guilty
alleviated court of duty to determine whether § 2254 or § 2241(c)(3) applied), *with Stow*, 389 F.3d 880 (9th Cir. 2004)
(looking at detention as of "the time [the petitioner] filed his petition"); *Dickerson v. Louisiana*, 816 F.2d 220, 224 (5th

a state court has adjudicated a petitioner's claim on the merits, AEDPA forbids federal courts from granting habeas relief unless the state court ruling was, *inter alia*, "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The "contrary to" clause is implicated where the court finds "'a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.'" *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008) (quoting *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001)). Relief is proper under the "unreasonable application" clause where "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Miller*, 269 F.3d at 614). Under that clause, a petitioner must show not only an error of federal law, but also the unreasonableness of that error. *Id.* (citing *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000)).

## III.  ANALYSIS: DOUBLE JEOPARDY CLAIM

The Fifth Amendment's Double Jeopardy Clause provides that no person be "subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. This right attaches when a jury is impaneled and sworn, *Fulton v. Moore*, 520 F.3d 522, 528 (6th Cir. 2008) (citing *Serfass v. United States*, 420 U.S. 377 (1975)), and precludes a second trial absent (1) a mistrial justified by a "manifest necessity" or (2) consent to the mistrial by the defendant, *Johnson v. Karnes*, 198 F.3d 589, 594 (6th Cir. 1999). Only the former exception is implicated here.

In determining whether a "manifest necessity" exists, Courts need not find an absence of alternatives but only a "high degree" of necessity. *Ross v. Petro*, 515 F.3d 653, 660-61 (6th Cir. 2008) (citing *Arizona v. Washington*, 434 U.S. 497 (1978)). Where, as here, a mistrial stemmed from prejudicial opening statements by the defendant, a trial judge's mistrial determination warrants "special respect." *Washington*, 434 U.S. at 510.

Nevertheless, such deference is not determinative. Rather than eviscerate Double Jeopardy protections through obsequious review standards, the Supreme Court requires appellate courts "to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." *Id.* at 514. This ensures that judges "'temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society. . . .'" *Id.* (quoting *United States v. Jorn*, 400 U.S. 470, 486 (1971)). "Sound discretion" exists where the trial judge acts "responsibly and deliberately" rather than "irrationally or irresponsibly." *Id.*

### A.     Relevant Supreme Court Precedent

In *Arizona v. Washington*, the Supreme Court applied the "sound discretion" framework to improper opening statements. There, the defendant faced a second trial for murder. *Id.* at 498. During opening statements, the defendant's attorney told the jury that they would hear evidence of prosecutorial misconduct based on the withholding of exculpatory evidence in defendant's first trial. *Id.* at 499. Moving for mistrial, the prosecutor argued that any prior misconduct was irrelevant to guilt or innocence. *Id.* The trial court tentatively agreed but deferred its ruling. *Id.* at 499-500. When the motion was renewed the next morning, the trial judge engaged in a brief colloquy with the attorneys before granting the mistrial. *Id.* at 500-01.

---

Cir. 1987) ("Pre-trial petitions . . . are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and *regardless of the present status of the case*. . . .") (emphasis added). However, since the applicability of AEDPA has not been challenged, this Court assumes that it applies. *See, e.g., Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008) (applying AEDPA standards to pre-trial detainee without discussion).

The defendant responded by filing a habeas petition to prevent a third trial. *Id.* at 501. Denying relief, the Supreme Court determined that the mistrial was justified by a "manifest necessity." After explaining the dangers of prejudicial opening statements, particularly the risk of an entire panel being tainted, the Court recognized the trial judge's superior ability to assess jury prejudice and accorded mistrial rulings "special respect." *Id.* at 510-14. The Court then found that the trial judge did not act "irrationally or irresponsibly" but exercised "sound discretion" in declaring a mistrial:

> The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised 'sound discretion' in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the 'high degree' of necessity which is required in a case of this kind.

*Id.* at 515-16.

## B.     "Sound Discretion" Factors

Given the "special deference" owed to the state trial judge's mistrial ruling, Klein's argument necessarily relies on the "sound discretion" component of the "manifest necessity" analysis.[5] To ascertain whether "sound discretion" was exercised, this Court considers "whether the trial judge (1) heard the opinions of the parties about the propriety of the mistrial; (2) considered the alternatives to a mistrial; and (3) acted deliberately, instead of abruptly." *Fulton*, 520 F.3d at 529 (citing *Washington*, 434 U.S. at 515-16).[6]

The latter two factors provide little support for Klein. First, even assuming that the trial judge failed to consider mistrial alternatives on the record,[7] "the Supreme Court has never required that a judge consider other options when 'the record provides sufficient justification for the state-court ruling.'" *Walls v. Konteh*, 490 F.3d 432, 438 (6th Cir. 2007) (quoting *Washington*, 434 U.S. at 516-17). In *Washington*, the court found that the trial court could declare a mistrial based on opening statements accusing the prosecution of improperly withholding evidence. *Washington*, 434 U.S. at 510-14. In this case, Klein not only accused the prosecution of destroying evidence, he also revealed his stun belt in an attempt to portray himself as the victim of prosecutorial abuses. As such, the record provides sufficient justification. *See also Walls*, 490 F.3d at 438-39 (finding sufficient record justification based on jury distraction from September 11, 2001, terrorist attacks).

---

[5] Klein's briefs are peppered with references to a different standard: the "scrupulous exercise of judicial discretion." Following briefing, however, this standard was rejected in the AEDPA context. *Ross*, 515 F.3d at 662.

[6] Klein also asserts that the mistrial was not to his benefit. This Court, however, has never considered this as a factor. *See Fulton v. Moore*, 520 F.3d 522, 529 (6th Cir. 2008) (listing three factors); *see also United States v. Cameron*, 953 F.2d 240, 246 (6th Cir. 1992) (listing it as a factor used by the Ninth Circuit).

[7] This is a questionable assumption. The trial judge's written opinion expressly rejected curative instructions as overly prejudicial to Klein and, even putting that aside, the trial judge also considered the alternative of sanctions during opening statements, when he noted that he would have fined Klein had he been an attorney. *See Washington*, 434 U.S. at 512-13 (discussing alternatives to a mistrial and noting that "[i]n extreme cases, [the trial judge] may discipline counsel, or even remove him from the trial . . .").

Second, any arguments of "abrupt" action are seriously undercut by Klein's numerous improprieties and the trial judge's explicit warning, midway through the opening statements, of the potential for a mistrial: "I will declare a mistrial and we'll start all over. I have warned you just like I would an attorney. You have gone right past me six or seven times. Do it again, it's a mistrial, and we'll start all over." Rather than evincing a hasty mistrial declaration, the trial judge's repeated corrections and warnings demonstrate considerable restraint in dealing with a difficult litigant.

The first factor, however, does undercut a finding of "sound discretion." Despite Klein's desire to contest the mistrial motion, the trial judge failed to permit any argument on the issue. As a general matter, permitting the defendant to argue against a mistrial motion constitutes an important aspect of sound discretion. *See, e.g., Johnson*, 198 F.3d at 596. Nevertheless, the failure to allow argument is not determinative. For example, in *Walls*, this Court refused to grant habeas relief where a trial judge declared a mistrial *sua sponte* after the September 11, 2001, terrorist attacks. 490 F.3d at 434-35. The trial judge, worried that the attacks would distract the jurors from the case, made the decision to end the trial prior to contacting counsel. *See id.* at 442 (Gilman, J., dissenting). Nevertheless, this Court refused to find a lack of sound discretion because the judge's actions were neither irrational nor irresponsible. *Id.* at 439.

While argument may be vital when the prejudicial error is debatable, its relevance may be discounted in the face of open and obvious prejudice. *See Ross*, 515 F.3d at 661 ("In assessing whether retrial should be barred, a sliding scale of scrutiny is employed, one that depends on the reasons for the mistrial."); *Walls*, 490 F.3d at 443 (Gilman, J., dissenting) ("[A] standard of proportionality is at play in these cases: the lesser the amount of possible prejudice involved, the greater the trial judge's responsibility to consider alternative measures to a mistrial."). In this case, the likelihood of a tainted jury was much greater than the risk present in *Walls*; correspondingly, the failure to allow for argument is more innocuous. Whereas *Walls* involved jury distraction from extraneous events, Klein's improper comments and behavior created an overwhelming risk of prejudicing the jury's view of the case before it. Looking at the case against this backdrop of serious and prejudicial misbehavior, any argument against a mistrial would have been largely superfluous. In the words of the magistrate judge, it was "too late to 'unring the bell.'"

Thus, while we do not condone mistrial declarations in the absence of argument, we cannot conclude that the trial judge acted irrationally or irresponsibly in these circumstances. Accordingly, we hold that the trial judge did not act contrary to Supreme Court precedent when he declared a mistrial.

## IV. CONCLUSION

For the foregoing reasons, the district court's denial of habeas relief is **AFFIRMED.**