[Cite as *State v. Johnson*, 2017-Ohio-7257.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA3579 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| SHAWN M. JOHNSON, | : | **RELEASED: 08/09/2017** |
| Defendant-Appellant. | : | |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynksi, Ohio Assistant Public Defender, Columbus, Ohio, for appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Harsha, J.

{¶1} During opening statements to the jury in Shawn M. Johnson's trial for rape of a minor, his counsel referred to specific acts of sexual conduct by the alleged victim. Because the court concluded a curative instruction could not cure the violation of the rape shield statute, it granted the state's motion for a mistrial. In light of the rescheduling of the trial, Johnson filed a motion to dismiss based upon double jeopardy. The court denied that motion.

{¶2} First Johnson asserts that the trial court erred in declaring a mistrial because his counsel's opening statement properly referenced the victim's sexual activity to establish a motive to fabricate allegations of rape against him. We reject Johnson's contention because the rape shield statute prohibits testimony of the child's specific sexual activity to establish a bias or motive to lie. Moreover, Johnson forfeited any potential error when he did not raise this ground in his subsequent motion to dismiss.

And counsel could have established the child's bias or motive to falsely accuse Johnson by less graphic and nonspecific sexual conduct. Next Johnson contends that even assuming the evidence concerning the child's sexual activity was inadmissible, the court's declaration of mistrial and denial of his motion to dismiss was erroneous. However, the trial court did not abuse its discretion by determining that manifest necessity required a mistrial where it reasonably concluded reference to inadmissible evidence biased the jury to the extent that the taint could not be cured by an instruction. The court exercised its sound discretion by hearing the arguments of the parties concerning the propriety of the mistrial, considering alternatives to a mistrial, and acting deliberately, instead of abruptly.

{¶3}    Because the trial court properly declared a mistrial based on manifest necessity, jeopardy did not attach.   Consequently, the trial court did not err by denying Johnson's motion to dismiss the case.  We overrule Johnson's assignment of error and affirm the judgment of the trial court.

## I. FACTS

{¶4}    The Ross County Grand Jury returned an indictment that charged Shawn M. Johnson committed three counts of rape over a two-month period in 2015 on a child less than 13 years old.  The charges stemmed from Johnson's alleged sexual intercourse with his girlfriend's 12-year-old daughter, who later disclosed the conduct at school.  Johnson pleaded not guilty to the charges, and the case proceeded to a jury trial.

{¶5}    After the court swore in the jury trial counsel proceeded with opening statements.  Johnson's opening statement included several comments concerning the

child victim's sexual activities, including having sex with "an African American boy" while on vacation, sending messages to boys on her cellular telephone and tablet computer about being "friends with benefits," performing oral sex in the back of the bus, and sending pictures showing inappropriate body parts:

> The summer of 2015, you're going to hear that [the child] went to North Carolina to stay with her aunt and when she came back, she told Mr. Johnson some things that disturbed him greatly. She told him first and foremost that she had sex with an African American boy while on vacation. She also told him that she had started smoking marijuana. That changed the relationship between Mr. Johnson and [the child] because Mr. Johnson was concerned for her. You're going to hear [the child] doesn't get a whole lot of discipline from her mother and her grandmother because frankly, they don't like each other. They fight all the time. They call the police on each other and generally use [the child] against each other. You're going to hear that -- Mr. Johnson, however, because he cared for [the child], told her look, you can't be doing that. You can't be having sexual relations with boys. You can't be smoking marijuana. You're going to hear that she had a phone and a tablet computer and that Mr. Johnson checked the phone and the tablet computer and found messages on Facebook that disturbed him; messages to boys talking about being friends with benefits, giving blow jobs in the back of the bus, pictures that were showing inappropriate parts. You will hear that Mr. Johnson and [his girlfriend, the mother of the child] decided to take the phone and tablet away from [the child]. The phone and her tablet were taken from her. She lost her privileges. * * * You're going to hear that after [the child] makes the allegations against Mr. Johnson, he is removed from her life. Guess what she gets back? She gets back her phone. She gets back her tablet.

{¶6} After Johnson's opening statement the state moved for a mistrial, arguing R.C. 2907.02(D), the rape shield law, precluded evidence of the victim's sexual activity, and none of the statutory exceptions applied. The trial court gave both parties the opportunity to argue about the propriety of a mistrial. Johnson's counsel initially claimed that the evidence mentioned in his opening statement was admissible as other acts evidence under R.C. 2945.59 and Evid.R. 404(B), but later claimed that it was admissible based on his constitutional right to confrontation to establish the child's

motive to lie.  After hearing some initial argument, the trial court called a 30-minute recess and allowed counsel to research the issue.

{¶7}    After Johnson's counsel cited a couple of cases, the parties argued about whether a curative instruction could remedy any bias caused by the references to inadmissible evidence; the trial court determined that it could not and declared a mistrial based on manifest necessity.  The trial court issued an entry declaring a mistrial and setting the matter for a new trial.

{¶8}    Subsequently, Johnson filed a motion to dismiss the case based on double jeopardy.  He argued that:  (1) the state waived its right to a mistrial because it failed to timely object to his opening statement; and (2) the state failed to demonstrate a manifest necessity for the mistrial because any impropriety in Johnson's opening statement could have been cured by a timely instruction.  Johnson did not argue in his motion to dismiss that his comments about the child victim's sexual activities were proper because the evidence would have been admissible.  The state responded and the trial court issued an entry denying the motion.  The trial court noted that Johnson's motion did not argue that the sexual activity evidence was proper under R.C. 2907.02(D), and concluded that it correctly found a manifest necessity justified declaring a mistrial.  The trial court concluded that the violation of the rape shield law by Johnson's counsel was so egregious that it rendered a curative instruction ineffective.

## II. ASSIGNMENT OF ERROR

{¶9}    Johnson assigns the following error for our review:

THE TRIAL COURT ERRED WHEN IT DECLARED A MISTRIAL AND OVERRULED SHAWN'S MOTION TO DISMISS.

## III. JURISDICTION AND STANDARD OF REVIEW

**{¶10}** "A grant of a motion for mistrial has long been held not to be a final appealable order 'for the basic reason that it is not a judgment or order in favor of either of the parties which gives finality to the case.' " *State v. Nixon*, 5th Dist. Richland No. 2016 CA 0008, 2017-Ohio-8, ¶ 16, quoting *Mack v. Gulf Oil Co., Inc.,* 10th Dist. Franklin No. 76AP-299, 1976 WL 190161 (August 24, 1976). But an order denying a motion to dismiss on double-jeopardy grounds is a final appealable order. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 61. Thus, a court can review the granting of a mistrial in an appeal from the denial of a motion to dismiss an indictment after the mistrial. *See, e.g., State v. Carter*, 4th Dist. Adams No. 15CA1015, 2016-Ohio-5371, ¶ 36-39.

**{¶11}** "Appellate courts apply a de novo standard of review when reviewing the denial of a motion to dismiss an indictment on the grounds of double jeopardy." *State v. Anderson*, 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20. But when the dismissal motion is based on a challenge to a trial court's underlying declaration of a mistrial, we apply an abuse of discretion standard of review to that part of our analysis. *See Carter* at ¶ 38, citing *United States v. Keane*, 287 F.3d 229, 233-234 (1st Cir.2002); *United States v. Williamson*, 656 Fed.Appx. 175, 180 (6th Cir.2016) (appellate court reviews de novo a trial court's denial of a motion to dismiss based on double jeopardy, but reviews the trial court's underlying decision to grant a mistrial for abuse of discretion); *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 28-29 (applying an abuse of discretion standard of review to a trial court's declaration of mistrial).

IV. LAW AND ANALYSIS

A.  General Principles

{¶12}  Johnson's assignment of error contests the trial court's denial of his motion to dismiss the case based on a claim of double jeopardy.  Johnson correctly notes that jeopardy attached upon the swearing in of the jury, and argues because granting a mistrial was not a manifest necessity, double jeopardy attached and precludes a second attempt to try the case against him.

{¶13}  "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution ensures that a state may not put a defendant in jeopardy twice for the same offense."  *Gunnell* at ¶ 25, citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).  The Double Jeopardy Clause also "affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' "  *Oregon v. Kennedy*, 456 U.S. 667, 671-672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949); *Gunnell* at ¶ 25. The right attaches when a jury is impaneled and sworn, *State v. Meade*, 80 Ohio St.3d 419, 424, 687 N.E.2d 278 (1997), citing *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *see also State v. Baranski*, 173 Ohio App.3d 410, 2007-Ohio-4072, 878 N.E.2d 1058, ¶ 7.

{¶14}  The prohibition against double jeopardy precludes a second trial absent (1) a mistrial justified by a "manifest necessity" or (2) consent to the mistrial by the defendant.  *Klein v. Leis*, 548 F.3d 425, 431 (6th Cir.2008).  The first exception is at issue here.  *See State ex rel. Bevins v. Cooper*, 138 Ohio St.3d 285, 2014-Ohio-544, 6 N.E.3d 33, ¶ 6 ("The prosecutor can justify a mistrial and retrial under the Double

Jeopardy Clause of the Fifth Amendment if he can demonstrate 'manifest necessity' for

the mistrial").

{¶15} "In determining whether a 'manifest necessity' exists, Courts need not find

an absence of alternatives but only a 'high degree' of necessity." *Klein* at 431. "What

constitutes a 'manifest necessity' is left to the discretion of the courts, which must

'exercise a sound discretion on the subject [as] it is impossible to define all the

circumstances, which would render it proper to interfere." *Gunnell*, 132 Ohio St.3d 442,

2012-Ohio-3236, 973 N.E.2d 243, at ¶ 26, quoting *United States v. Perez*, 22 U.S. (9

Wheat.) 579, 580, 6 L.Ed. 165 (1824).

{¶16} "Where, as here, a mistrial stemmed from prejudicial opening statements

by the defendant, a trial judge's mistrial determination warrants 'special respect.' " *Klein*

at 431, citing *Arizona v. Washington*, 434 U.S. 497, 510, 98 S.Ct. 824, 54 L.Ed.2d 717

(1978). The United States Supreme Court has explained why "the overriding interest in

the evenhanded administration of justice requires that we accord the highest degree of

respect to the trial judge's evaluation of the likelihood that the impartiality of one or more

jurors may have been affected by the improper comment":

> An improper opening statement unquestionably tends to frustrate the
> public interest in having a just judgment reached by an impartial tribunal.
> Indeed, such statements create a risk, often not present in the individual
> juror bias situation, that the entire panel may be tainted. The trial judge, of
> course, may instruct the jury to disregard the improper comment. In
> extreme cases, he may discipline counsel, or even remove him from the
> trial as he did in *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47
> L.Ed.2d 267. Those actions, however, will not necessarily remove the risk
> of bias that may be created by improper argument. Unless unscrupulous
> defense counsel are to be allowed an unfair advantage, the trial judge
> must have the power to declare a mistrial in appropriate cases. The
> interest in orderly, impartial procedure would be impaired if he were
> deterred from exercising that power by a concern that any time a
> reviewing court disagreed with his assessment of the trial situation a retrial

would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper performance of his "duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct." *Id.*, at 612, 96 S.Ct., at 1082.

There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be. *See Wade v. Hunter*, 336 U.S. 684, 687, 69 S.Ct. 834, 836, 93 L.Ed. 974.

*Arizona* at 512-514 (footnotes omitted).

## B.  Inadmissible Evidence

**{¶17}**  First Johnson asserts that the trial court erred in declaring a mistrial and denying his motion to dismiss the case because his counsel's opening statement references to the victim's sexual activity were proper, i.e. this evidence was admissible at trial.

**{¶18}**  We reject Johnson's assertions for several reasons.  R.C. 2907.02(D), the rape shield law, prohibits evidence of specific instances of the victim's sexual activity unless one of the stated exceptions applies:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

**{¶19}**  At trial Johnson argued that evidence of the child victim's sexual activity in these circumstances would be admissible in spite of the rape shield law under R.C.

2945.59 and Evid.R. 404(B) as "other acts" evidence: it establishes the child's motive to lie. But R.C. 2907.02(D) does not include this as an exception to the prohibition against evidence of specific instances of the victim's sexual activity, even though the same provision notes that this evidence is admissible against the defendant.[1] And Johnson does not claim on appeal that his opening statement comments about the child victim's sexual activities fits within a recognized statutory exception to the rape shield law.

{¶20} Second, Johnson forfeited any potential error by the trial court's failure to consider that his constitutional right to confront his accuser precluded R.C. 2907.02(D) from barring evidence on the child's sexual activities. Although Johnson did also claim at trial that the rape shield provision could not be applied to the evidence he sought to introduce because it would violate his constitutional right to confront his accuser, he ultimately abandoned that argument in his subsequent motion to dismiss the case. Instead he focused his argument on claims that the state did not timely object to his opening statement and that a curative instruction could have remedied any reference to inadmissible evidence. Ultimately, the trial court denied his motion to dismiss, emphasizing that in the motion, "defense counsel does not argue that he did not violate the provisions of [R.C.] 2907.02(D)." Under these circumstances, the trial court did not abuse its discretion in treating references in his opening statement to the child victim's sexual activities as improper comments on inadmissible evidence when Johnson failed to argue otherwise in the motion to dismiss.

---

[1] R.C. 2907.02(D) provides that "[e]vidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section *unless it* involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or *is admissible against the defendant under section 2945.59 of the Revised Code*, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." (Emphasis added.)

**{¶21}** Finally, even assuming that Johnson did not abandon this argument, the trial court properly concluded that applying the rape shield statute to bar comments about the child victim's sexual activities did not violate Johnson's constitutional right of confrontation. "In determining whether the rape shield law would unconstitutionally infringe on a defendant's rights, a court must 'balance the state interest which the statute is designed to protect against the probative value of the excluded evidence.' " *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 66, quoting *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979). "Several legitimate state interests are advanced by the rape shield law," including: (1) discouraging the tendency in rape cases to try the victim rather than the defendant; (2) encouraging the reporting of rape and aiding crime prevention; and (3) aiding the truth-finding process by excluding evidence that is unduly inflammatory and prejudicial, while only being marginally probative. *Id.* at ¶ 67, citing *Gardner* at 17.

**{¶22}** Against these legitimate state interests, Johnson claimed that the evidence of the child's specific sexual activities – that she told him she had sex with an "African American" boy while on vacation, that he found messages to boys on her cell phone and tablet computer talking about being friends "with benefits," performing "blow jobs" in the back of the bus, and including pictures containing inappropriate images - was probative evidence because it led to the decision to discipline the victim by taking her phone and tablet away from her. In turn, that prompted the child to retaliate by making up the rape charges against Johnson. That is, he argued that this evidence was necessary to establish the child's bias against Johnson and provided a motive for her to falsely accuse him.

**{¶23}** Johnson primarily relies upon two cases to support his claim. In *State v. Williams*, 21 Ohio St.3d 33, 487 N.E.2d 560 (1986), the Supreme Court of Ohio held that the rape shield law did not preclude proof by extrinsic evidence of the rape victim's reputation in the community as a prostitute or her prior sexual relations with the victim. To establish her lack of consent to sex with the defendant, the victim testified on direct examination that she never consented to sex with men because she was a lesbian. In light of her direct testimony, the Supreme Court found that the extrinsic evidence was introduced to do more than simply impeach the victim's credibility; it was probative of the determinative issue of fact, i.e. whether the victim was raped. Thus the probative value of the extrinsic evidence in *Williams* outweighed any interest the state had in exclusion. This case is distinguishable from *Williams* because consent is not a contested issue for the statutory rapes charged here. And although motive of the victim is a relevant issue, the contested evidence does not directly "negate the implied establishment of an element of the crime charged." *Id.* at 36. Thus the probative value of the extrinsic evidence here does not outweigh the interest the state had in exclusion.

**{¶24}** In the remaining case Johnson emphasizes, *State v. Ector,* 6th Dist. Lucas No. L-07-1169, 2009-Ohio-515, at ¶ 25, the court did conclude that "it is highly relevant if the sole principal witness against appellant had a motive to fabricate the [rape] accusation." But even there, the court emphasized that its holding was supported by evidence that "[a]t least one of [the victim's] responses on the clinic admission questionnaire is in direct conflict with her statements to police and her trial testimony on an issue that is an element of each of the offenses charged." *Id.* at ¶ 26. There is no similar evidence in the record here establishing a direct conflict on an issue that is an

element of the rape charges.  Moreover, even if we were to agree that Johnson's evidence of the child's prior sexual activities had some probative value in explaining a motive to lie about Johnson, the trial court did not abuse its discretion in determining that any probative value of the specific graphic conduct was outweighed by the several state interests supporting application of the rape shield law.

{¶25}  As the trial court noted when the state moved for a mistrial, Johnson failed to give any notice before trial that he would introduce this evidence.  Such notice would have allowed the court to address the issue in chambers outside the hearing of the jury. R.C. 2907.02(E) provides that "[p]rior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during trial."  The major purpose of this provision "is to insure an in camera hearing before presentation of any evidence of sexual activity takes place, as opposed to a mere discussion at the bench."  *See State v. Liddle*, 9th Dist. Summit No. 23287, 2007-Ohio-1820, ¶ 64, citing *State v. Acre*, 6 Ohio St.3d 140, 143, 451 N.E.2d 802 (1983).  Had defense counsel provided proper notice, the court would have had the opportunity to allow Johnson to introduce less specific, less graphic nonsexual and sexual evidence of bias, i.e., that the child engaged in inappropriate sexual conduct, her use of marijuana while on vacation and messaging inappropriate things to boys without detailing their inflammatory  and potentially racially charged nature. In other words here the devil is in the details, which could have been avoided if defense counsel had provided notice.  Prior notice could have permitted Johnson to

introduce evidence of bias and a motive for the child victim to falsely accuse him without making a mockery of the rape shield law, yet still protecting his right of confrontation. In *State v. Pennington*, 10th Dist. Franklin No. 91AP-13, 1991 WL 4766699, *6-8 (July 30, 1991), the court similarly rejected a confrontation claim, by noting that there was compelling nonsexual evidence of bias on the part of the victim before the jury and that the defendant could have explored the evidence more thoroughly in a pretrial evidentiary hearing under R.C. 2907.02(E), but did not.

**{¶26}** Because the rape shield law manifestly prohibited them, we reject Johnson's assertion that the opening statement's references to the child victim's sexual activities were proper; he forfeited any error in that regard by not including this argument in his motion to dismiss the case. And the trial court properly determined that his constitutional right to confrontation did not warrant the admission of this evidence.

### C. Manifest Necessity

**{¶27}** Next Johnson argues that even if his opening statement was improper because it referenced the child victim's sexual activities in violation of the rape shield law, the state did not establish a manifest necessity for a mistrial because a curative instruction by the trial court would have remedied any potential juror bias.

**{¶28}** Given the special respect we accord trial court determinations involving improper comments by defense counsel in an opening statement, we must determine whether the trial court exercised "sound discretion" in declaring a mistrial. *Arizona*, 434 U.S. at 514, 98 S.Ct. 824, 54 L.Ed.2d 717. Reviewing courts have upheld the trial court declarations of mistrial based on manifest necessity from an improper opening statement by defense counsel as long as the trial court properly exercises its sound

discretion. *Arizona* and *Klein*, 548 U.S. 425. To ascertain if the trial court exercised "sound discretion," reviewing courts consider whether the trial court: (1) heard the opinions of the parties about the propriety of the mistrial; (2) considered the alternatives to the mistrial; and (3) acted deliberately, instead of abruptly. *Klein* at 432, citing *Arizona* at 515-516.

**{¶29}** Applying these factors here, the record reveals that the trial court gave both parties an opportunity to be heard on the matter after the state moved for a mistrial; it gave counsel some time to research the issue and argue further; it considered the alternative of a curative instruction but determined that potential juror bias could not be cured; and it acted deliberately instead of abruptly after considering the parties' arguments on the matter. In addition the court considered the parties' subsequent written arguments on Johnson's motion to dismiss the case before it denied the motion.

**{¶30}** Johnson's appellate counsel contends the record reveals that the trial court failed to apply the proper balancing analysis that court precedent requires because the court did not expressly include reference to balancing in its decision. However, during the hearing the court did consider the cases cited by counsel, including *Williams*, *Gardner* and *Ferguson*, but found them distinguishable. Given the court's explicit acknowledgment of the pertinent case law, we will not assume the court failed to understand or apply it in the absence of any affirmative evidence the court disregarded the analysis set forth in the cases it referenced.

**{¶31}** Consequently, we are persuaded "by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to [defendant's]

interest in having the trial concluded in a single proceeding." *Arizona* at 515. "Neither party has a right to have his case decided by a jury which may be tainted with bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgements' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled." *Id.* quoting *Wade*, 336 U.S. at 689, 69 S.Ct. 834, 93 L.Ed. 974.

{¶32} The trial court did not abuse its broad discretion in declaring a mistrial based on manifest necessity. And in light of the manifest necessity to declare the mistrial, the protection afforded by the prohibition against double jeopardy did not attach. The court properly denied the motion to dismiss. We overrule Johnson's assignment of error.

## V. CONCLUSION

{¶33} Having overruled Johnson's assignment of error, we affirm the judgment of the trial court denying his motion to dismiss the case.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**